UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| The Penn Mutual Life Insurance Company, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 06366 |
| v. | ) ) | Judge Edmond E. Chang |
| GreatBanc Trust Company, as trustee of the Horace Windham 2007 Insurance Trust; Horace Windham; Kevin Bechtel; and Steven Brasner, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Penn Mutual Life Insurance Company seeks a declaration that the policy of life insurance issued on the life of Defendant Horace Windham is void or voidable due to a lack of insurable interest at inception and/or material misrepresentations in the application for the Policy.[1] Defendants GreatBanc Trust Company and Horace Windham move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). R. 147. For the following reasons, Defendants' motion is denied.

## I.

In evaluating a defense motion for judgment on the pleadings, the Court must accept as true the complaint's factual allegations. In September 2007, Horace

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

Windham applied to Penn Mutual for a $6 million life insurance policy. R. 1 (Compl.) ¶ 22. According to the application, Windham desired to procure the policy for "financial planning" purposes. *Id.* ¶¶ 23, 30. However, Penn Mutual claims that this representation was false and that, from the outset, Windham actually intended to transfer the policy to a third-party investor in exchange for payment. *Id.* ¶¶ 38-41.

Penn Mutual alleges that Windham's arrangement is unlawful because the investor/transferee was a stranger. *Id.* ¶¶ 10-12. Specifically, Penn Mutual claims that Defendants Kevin Bechtel and Steven Brasner approached Windham about applying for a life insurance policy. *Id.* ¶ 20. Neither Bechtel nor Brasner has a familial relationship with Windham, or any other legally recognized interest in Windham's life. *Id.* ¶ 57. Rather, according to Penn Mutual, Bechtel and Brasner solicited Windham's participation in a "stranger originated life insurance" scheme (commonly referred to as a "STOLI" scheme). *Id.* ¶ 20. Pursuant to the scheme, Windham created a trust, named the Horace Windham 2007 Insurance Trust, to serve as the owner and the beneficiary of the life insurance policy. *Id.* ¶ 21. Windham's insurance application listed the Windham Trust as the intended owner of the policy, and Defendant GreatBanc Trust Company as the trustee of the Windham Trust. *Id.* ¶ 24. Penn Mutual alleges in its complaint that in exchange for the beneficial interest in Windham's life, Bechtel, Brasner, and/or GreatBanc likely paid the premium payments in connection with the policy, as well as compensation to Windham for his participation in the scheme. *Id.* ¶¶ 16, 41, 50-51, 54.

Windham's insurance application and its accompanying agent's underwriting report affirmatively represented that the policy was *not* being sought for purposes of resale in the secondary market. *Id.* ¶¶ 24-28, 33-36. For instance, the application asked whether Windham had been involved in any discussion about the possible sale or assignment of the policy to a secondary market provider. *Id.* ¶ 25-27. The application also asked whether any part of the premiums would be paid from funds that were borrowed or otherwise financed. *Id.* ¶ 28. Windham answered "no" to both of those questions. *Id.* ¶¶ 27-28. Based on these and other representations in the insurance application and agent's underwriting report, Penn Mutual issued a life insurance policy in October 2007 for $6 million in total coverage. *Id.* ¶ 37.

Later, Windham took steps to effectuate a transfer of the policy to the investor(s), and Penn Mutual brought this action. *Id.* ¶ 40. Penn Mutual claims that Defendants made material misrepresentations in the documents submitted for the life insurance policy and that the Windham Trust never had an insurable interest in the policy. *Id.* ¶¶ 47-66. Therefore, Penn Mutual claims that it is entitled to a judicial declaration that the policy is void and to an award of damages. *Id.* ¶¶ 55, 60, 66.

## II.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after both the plaintiff's complaint and the defendant's answer have been filed. Fed. R. Civ. P. 12(c). Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *Piscotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). "A motion under Rule 12(b)(6) challenges the sufficiency of the

3

complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). As with Rule 12(b)(6) motions, the Court must view the facts alleged in the light most favorable to the non-moving party. *Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 464 (7th Cir. 2012). The Court will grant the motion only if no genuine issues of material fact exist and if it appears beyond doubt that the non-moving party is unable to prove any set of facts to support its claim for relief. *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 718-19 (7th Cir. 2002).

## III.

Defendants GreatBanc and Horace Windham argue that their Rule 12(c) motion should be granted because they consent to the relief Penn Mutual requests in Counts 1 and 2 of the complaint (a declaration that the policy is void), and thus there is no longer a controversy to be adjudicated in this case.[2] R. 149 (Defs.' Br.) at 1-2. It is Defendants' position that the relief sought in Counts 1 and 2 is limited to a declaration rescinding the life insurance policy. *Id.* Because Defendants now concede to the rescission of the policy, they agree that Penn Mutual should be relieved of its obligation to pay out on the policy in the event of Windham's death. However, the sticking point that led to the filing of the present motion is whether Penn Mutual must return over $400,000 in premiums paid on the policy to GreatBanc, which is the trustee of the

---

[2]The complaint also alleged a third claim for damages, but Defendants argue that if their motion prevails on Counts 1 and 2, then Count 3 is barred by the doctrine of election of remedies. R. 149 (Defs.' Br.) at 1.

4

Windham Trust and the supposed owner of the life insurance policy. The parties' dispute centers on this issue.

Penn Mutual argues that a rescission is not the appropriate remedy in this case because Windham's life insurance policy was an illegal contract. R. 158 (Pl.'s Resp.) at 7. Penn Mutual contends that the policy was based on an illegal STOLI scheme, thereby making the subject matter of the contract illegal. *Id.* at 7-8. Under Illinois law,[3] "if the subject matter of a contract is illegal, that contract is void *ab initio.*" *Ill. State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 821 N.E.2d 706, 712 (Ill. App. Ct. 2004). And "a contract that is void *ab initio* is treated as though it never existed." *Id.* at 713. Thus, Penn Mutual argues that because the policy was void at its inception, it does not have the option to simply rescind the policy and get back the paid premiums. Because the policy was (in Penn Mutual's view) void from the start, the parties should be left "where, by their own acts, they have placed themselves." Pl.'s Br. at 8 (quoting *Keenan v. Tuma*, 240 Ill. App. 448, 456 (Ill. App. Ct. 1926)). In other words, Penn Mutual gets to keep all of the premiums already paid for the Windham policy.

Under Illinois law, "a life insurance policy must not be sold to or be procured by an individual who has no insurable interest in the life of the insured." *Bajwa v. Metro. Life Ins. Co.*, 776 N.E.2d 609, 616-17 (Ill. App. Ct. 2002). Here, Penn Mutual claims that the owner listed on the policy application, the Windham Trust, did not have an

---

[3]The parties assume that Illinois law governs, and the Court will proceed on that basis. *See Health Care Indus. Liability Ins. Program v. Momence Meadows Nursing Ctr.*, 566 F.3d 689, 693 (7th Cir. 2009).

5

insurable interest in Windham's life. Compl. ¶¶ 57-59. Penn Mutual contends that Defendants formed the Trust solely to create the illusion of an insurable interest, and the Trust was then used to procure the policy for investors. Pl.'s Br. at 9-10. Penn Mutual argues that this exact arrangement is prohibited by the Illinois Viatical Settlements Act of 2009, 215 ILCS 159/5 (West 2012). *Id.* at 9. The Act defines "stranger-originated life insurance" as an "arrangement to initiate a life insurance policy for the benefit of a third-party investor who, at the time of the policy origination, has no insurable interest in the insured." 215 ILCS 159/5. Likewise, arrangements to transfer the ownership of a policy or policy benefits to a third-party also qualify as "STOLI practices." *Id.* The Viatical Settlements Act prohibits anyone from entering into stranger-originated life insurance or STOLI as defined by the Act. 215 ILCS 159/50.

Penn Mutual's theory finds support in many documents attached to its response to Defendants' motion for judgment on the pleadings. Between the filing of the complaint (October 2009) and the filing of the instant motion (August 2011), the parties exchanged written discovery, completed their document productions, and obtained documents from third-parties. *See* R. 152 (Pl.'s Opp. to Defs.' Motion to Stay Discovery). With the benefit of this additional evidence, Penn Mutual now contends that *before* it issued the insurance policy in October 2007, the Windham Trust was replaced with the Amended and Restated Trust Agreement of Horace Windham 2007 Insurance Trust. Pl.'s Resp. at 3-4; Pl.'s Exh. B. Although the Amended Windham Trust is dated December 10, 2007 (and the original Trust was created in September

6

2007), Penn Mutual contends that dates on the Amended Windham Trust and other documents were falsified by Defendants. *See* Pl.'s Resp. at 5. The Amended Windham Trust provides that its sole beneficiary was yet another trust, the Horace Windham 2007 Family Trust. Pl.'s Resp. at 4. Thus, Penn Mutual asserts that the Family Trust was granted the sole undivided interest in the Amended Windham Trust, the only asset of which was the life insurance policy. *Id.*

Penn Mutual contends that contemporaneously with the Family Trust being named beneficiary of the Amended Windham Trust, the Family Trust transferred all of its interests to an entity known as the GIII Accumulation Trust. *Id.* This transfer was accomplished through a Beneficial Interest Purchase Agreement. *Id.*; Pl.'s Exh. D. The Purchase Agreement provides that the Family Trust's complete interest in the Amended Windham Trust (*i.e.*, its interest in the insurance policy) was sold to GIII—an entity that Penn Mutual contends is a complete stranger to Windham and has no insurable interest in his life. Pl.'s Resp. at 4. Penn Mutual claims that GIII funded the premium payments for the policy. *Id.* at 5.

Penn Mutual argues that all of this evidence demonstrates that the policy in this case was in fact an illegal contract procured through intentional misrepresentations for the purpose of gambling on the death of Windham. *Id.* at 7. Defendants generally dispute the "conspiracy theories" described in Penn Mutual's opposition brief, but they do not believe the additional facts alleged are relevant to deciding the instant motion. R. 164 (Defs.' Reply) at 2-3. Instead, Defendants argue that even if the policy is an

7

illegal contract, rescission is the correct remedy and, accordingly, Penn Mutual must return the premiums to Defendants. *Id.* at 1-2.

Defendants' argument is premised on their belief that Penn Mutual solely seeks rescission of the policy, and that rescission is the only available remedy under the facts alleged. *See id.* at 7 ("Because rescission has been conceded . . ."). Defendants argue that Illinois law does not distinguish between contracts that are void *ab initio* as opposed to those that are "voidable." *Id.* at 2, 4. Rather, according to Defendants, a policy that is declared void, voidable, or void *ab initio* results in the same remedy: rescission. *Id.* at 8.

Contrary to Defendants' argument, Illinois law does indeed recognize the distinction: "rescission presumes the existence of an otherwise valid and enforceable contract." *Jensen v. Quick Int'l*, 820 N.E.2d 462, 466-67 (Ill. 2004) (citing *Cusamano v. Norrell Health Care, Inc.*, 607 N.E.2d 246, 250 (Ill. App. Ct. 1992)). Here, Penn Mutual challenges the validity of the contract as whole, and argues that a party cannot legally enter into a STOLI insurance scheme. Under Illinois law, a contract that expressly contravenes the law or a known policy of the state will be declared illegal. *See In re Marriage of Newton*, 955 N.E.2d 572, 584-85 (Ill. App. Ct. 2011). The question of whether a contract is enforceable under considerations of public policy is a legal question, *id.*, and if the contract is indeed illegal from its inception, then (other than declaring the contract void) courts will leave the parties where they are, *see Gamboa v. Alvarado*, 941 N.E.2d 1012, 1016-17 (Ill. App. Ct. 2011) ("[G]enerally, parties to a

8

void contract will be left where they have placed themselves with no recovery of the money paid for illegal services.") (quotation omitted).

Because Defendants believe that rescission is the only viable remedy, Defendants' broadest argument is that the Court should ignore Penn Mutual's argument that the policy is illegal under Illinois law; Defendants argue that their concession to rescission should end the case. Defs.' Reply at 3, 9 n.5. Alternatively, Defendants argue that Penn Mutual has failed to establish that STOLI policies are illegal under Illinois law. *Id.* at 8. Defendants argue that the cases cited by Penn Mutual are distinguishable and purportedly lend support to the proposition that a policy procured by the insured himself is valid. *Id.* at 9. But, contrary to Defendants' belief that the policy was "undisputably" procured by Windham himself, there *is* a dispute over who purchased the policy. Penn Mutual alleges that Defendants procured the policy by using Windham and the Windham Trust to disguise the true owner of the policy. *See* Pl.'s Resp. at 9 n.30; *see also Ohio Nat'l Life Assurance Corp. v. Davis*, 2011 WL 2680500, at *5 (N.D. Ill. July 6, 2011) (allegation that insured signed life insurance application did not require dismissal of plaintiff's insurable interest claim because plaintiff also alleged facts showing that insured was used as a "straw man"). Moreover, Defendants do not address what effect the Viatical Settlements Act has on the legality of the policy in this case. Again, Defendants urge the Court to ignore Penn Mutual's legal argument that the Viatical Settlements Act codified Illinois' long-standing disdain for STOLI arrangements. Defs.' Reply at 4. In passing, Defendants point out that the

Act was enacted two years after Windham's life insurance policy was issued, but they do not develop an argument about whether the Act applies in this case.

As noted above, Defendants instead focus their argument on whether Penn Mutual is required to return the premiums even if the contract is an illegal wagering contract. But this is putting the cart before the horse. Defendants deny that they entered into a STOLI transaction, and argue that the Windham insurance policy is legal under Illinois law. Defs.' Reply at 11. As discussed above, the remedies available to Penn Mutual in this case are likely dependent on the legality of the policy and other facts that are not properly considered on a Rule 12(c) motion. Indeed, Penn Mutual states that deposition testimony is likely necessary to support its claims—in particular, whether the GIII transaction occurred before the Windham policy was issued. Pl.'s Resp. at 1, 5.

For these reasons, Defendants' motion for judgment on the pleadings must be denied. Additional discovery is needed before the Court can decide whether Windham's life insurance policy is illegal as a matter of law. If the policy was a STOLI arrangement and was void as against public policy, then Illinois law typically directs courts to treat the contract as though it never existed. *See Gamboa*, 941 N.E.2d at 1016-17. On the other hand, if Defendants are able to show that the policy is not illegal as a matter of law (*e.g.*, Windham procured a life insurance policy on his own life and lawfully decided to designate a beneficiary without an insurable interest) or it is illegal but one of the exceptions apply (*e.g.*, Defendants are not *in pari delicto* with Penn Mutual), *see id.* at 1017 (describing two exceptions), then rescission may be the only

10

proper remedy, without return of the already-paid premium installments. The same would be true if Defendants are able to prove that the policy was actually legal, even though certain misrepresentations were made in the insurance application. *See, e.g., Coregis*, 821 N.E.2d at 712 (material misrepresentations in an insurance application do not render the policy illegal; rather, the insurer may elect to rescind the policy).

## IV.

For the reasons stated above, Defendants' motion for judgment on the pleadings [R. 147] is denied. The June 26, 2012 status hearing remains as scheduled. At the status hearing, the parties should be prepared to discuss how to move the case forward, including the setting of the discovery schedule and whether a settlement conference would be appropriate before embarking on discovery. The parties must confer on those topics before the June 26 status hearing.

ENTERED:

Honorable Edmond E. Chang
United States District Judge

DATE: June 8, 2012

11